IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOULLE, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:12-CV-1462-L (BF) |
| | § | |
| DE BOULLE DIAMOND & | § | |
| JEWELRY, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| DE BOULLE DIAMOND & | § | |
| JEWELRY, INC., | § | |
| | § | |
| Counter-Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BOULLE, LTD., | § | |
| | § | |
| Counter-Defendant. | § | |
| | § | |
| DE BOULLE DIAMOND & | § | |
| JEWELRY, INC., | § | |
| | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JEAN-RAYMOND BOULLE, | § | |
| | § | |
| Third-Party Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This civil action is before the Court on Plaintiff/Counter-Defendant Boulle, Ltd. and

Third-Party Defendant Jean-Raymond Boulle's (together, "Plaintiffs") motion for summary

1

judgment and Defendant/Counter-Plaintiff/Third-Party Plaintiff De Boulle Diamond & Jewelry, Inc.'s ("Defendant") cross-motion for summary judgment and supplemental motion for summary judgment. At issue are the parties' competing claims for trademark infringement and unfair competition under federal and state law, as well as the affirmative defenses of release, abandonment, laches, and estoppel. Having carefully reviewed the parties' motions, briefs, responses, supplemental briefs, oral argument, the complete summary judgment record, and the applicable law, the Court recommends that Plaintiffs' motion for summary judgment be DENIED and Defendant's cross-motion for summary judgment and supplemental motion for summary judgment be GRANTED in part and DENIED in part.

## I. Background

This is a trademark infringement and unfair competition case between two brothers, Jean Boulle and Denis Boulle, who came to Dallas in 1980 to start a diamond investment business. *See* Def. MSJ App. at 2, ¶ 3 & 3, ¶ 11. The two worked together and with various partners under several assumed names selling diamonds to consumers for personal use and investments on a wholesale basis until 1983 when Denis Boulle left to form a separate diamond and jewelry business. *See id.* at 2, ¶¶ 3-6. Shortly thereafter, Denis Boulle renamed his business De Boulle Diamond & Jewelry, Inc. and opened a retail store in Dallas using the name "De Boulle." *Id.*, ¶ 7. According to Denis Boulle, he chose the name De Boulle because it incorporates the first two letters of his first name, "De," which in French means "of," and therefore connotes "of Boulle." *Id.* Denis Boulle and/or Defendant have continuously operated a luxury retail jewelry business in Dallas using the De Boulle name since 1984. *Id.*, ¶ 8 & 9, ¶¶ 24-25. In 2006, Defendant obtained a

U.S. Trademark Registration from the United States Patent and Trademark Office ("USPTO") for the DE BOULLE trademark. *Id.*, at 3, ¶ 10 and Ex. A.

Between 1984 and 1993, Jean Boulle bought and sold diamonds and jewelry in Dallas, including merchandise from Defendant, using various names that incorporated "Boulle." *See id.* at 3-4, ¶¶ 11, 14-15; *see also* Pl. Supp. App. at 213-217. In 1993, Jean Boulle left the United States to pursue mining activities and other business interests, *see* Def. MSJ App. at 4, ¶ 15, but he continues to use a BOULLE mark to market and promote his international investment activities. Pl. Supp. MSJ App. at 240, ¶ 2. In 2010, Jean Boulle assigned all of his rights in the BOULLE mark to Boulle, Ltd. *See* Def. MSJ App. at 595. Boulle, Ltd. then filed several trademark applications with the USPTO, but the USPTO refused to register the BOULLE marks on grounds that they would likely cause confusion among consumers with the DE BOULLE mark. *See id.* at 525-93. In response, Boulle, Ltd. filed a petition with the USPTO's Trademark Trial and Appeal Board seeking to cancel Defendant's registration for the DE BOULLE mark, *id.* at 167-77, as well as the instant civil action claiming that Defendant's use of the DE BOULLE mark infringes on the BOULLE mark. Defendant filed counterclaims against Boulle, Ltd. and third-party claims against Jean Boulle alleging that their use of the BOULLE mark in the Dallas diamond and jewelry business constitutes trademark infringement and unfair competition under federal and state law.

More than a year into this litigation and less than two weeks prior to the discovery deadline, Plaintiffs brought to the Court's attention a Compromise Settlement Agreement and Mutual Release executed by Jean Boulle and Denis Boulle in 1993 (the "1993 Settlement Agreement" or the "Agreement") that they contend bars all the claims in this lawsuit. Specifically, the Agreement provides that Jean Boulle and Denis Boulle "release, acquit, and forever discharge"

3

the other and his related and affiliated business entities "from and of any and all claims, liability or causes of action of any kind whatsoever, at common law, statutory or otherwise, which the [releasing parties] have or might have, known or unknown, now existing or that might arise hereafter against the [released parties] . . . ." Def. MSJ App. at 90-91, ¶¶ 9, 10. Based on this language, Plaintiffs sought leave to amend their answer to assert the affirmative defense of release and filed the first of the pending motions for summary judgment. The Court directed Defendant to file a cross-motion for summary judgment and later held a consolidated hearing on the motion for leave to amend, the summary judgment motions, and several discovery motions. Order dated 9/27/2013. The Court subsequently granted leave to amend and took the other matters under advisement while the parties pursued mediation. Order dated 11/21/13. When the case did not settle, the Court allowed the parties to conduct additional discovery and supplement their summary judgment briefs. Order dated 2/11/14.

Succinctly stated, Plaintiffs presently contend that they are entitled to summary judgment as to all of Defendant's counterclaims and third-party claims on grounds that such claims were released by the parties' 1993 Settlement Agreement. Plaintiffs argue that the Agreement incorporates an exceptionally broad release which the parties intended to apply to future claims so they could continue operating competing businesses without fear of liability. Plaintiffs further contend that Defendant's counterclaims and third-party claims are barred by the doctrines of laches and acquiescence because Defendant knew of the use of the BOULLE mark, gave assurances that it did not object to such use, and delayed bringing its claims for at least twenty-five years. Defendant disputes that the scope of the 1993 Settlement Agreement encompasses the claims at issue in this case and moves for summary judgment on the issue in its favor. According to

4

Defendant, such a broad interpretation would violate public policy and render the provision void. Alternatively, Defendant contends that the release provision is ambiguous. Defendant further disputes that its claims are barred by laches and acquiescence and moves for summary judgment in its favor on Plaintiffs' affirmative defenses. Specifically, Defendant contends that Jean Boulle abandoned use of the BOULLE mark in the United States after 1992, and thus it had no reason to object or take any action to protect its mark. Defendant also moves for summary judgment on Plaintiffs' claims for trademark infringement and unfair competition, as well as its own affirmative defenses of abandonment, laches, and acquiescence. Defendant contends that Plaintiffs' BOULLE mark is not legally protectable because it is merely a descriptive mark that has not acquired secondary meaning. Further, Defendant argues that the BOULLE mark should be deemed abandoned because Jean Boulle did not use the mark in the United States for more than twenty years. Defendant argues that Plaintiffs' claims are barred by laches and acquiescence because Jean Boulle has known of its use of the DE BOULLE mark since 1984 but did not bring any action to enforce its rights until 2011. According to Defendant, Jean Boulle gave, and continues to give, assurances that he does not object to Defendant using the DE BOULLE mark. Finally, Defendant moves for summary judgment on its claims for infringement and injunctive relief. Defendant contends that the DE BOULLE mark is the senior mark and Plaintiffs' use of the BOULLE mark creates a likelihood of confusion.

The issues are now fully briefed and argued, and the summary judgment motions are ripe for determination.

## II. Legal Standards

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.*

(citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Preliminary Matters

As a preliminary matter, the parties object to certain evidence which is included as part of the summary judgment record. Defendant initially objects to and moves to strike certain factual allegations set out in the "Background" section of Plaintiffs' brief on grounds that such allegations are conclusory and cannot be taken as true for purposes of raising a genuine fact issue. Def. Obj. at (Doc. 88) 1-2 and Def. Obj. (Doc. 104) at 3-5. The Court recognizes that conclusory allegations

and unsupported assertions are insufficient to avoid summary judgment, *see Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011), but it is not necessary to strike the disputed factual allegations. The Court has carefully considered the entire record and based its findings and conclusions only on those facts evidenced by competent summary judgment proof.

Defendant further objects to (1) statements in Jean Boulle's supplemental declaration and (2) certain photographs, donation forms, invoices, and other documents proffered to show use of the BOULLE mark, including use of the mark from 1984 to 1992. Def. Obj. (Doc. 88) at 2-5; Def. Obj. (Doc. 99) at 1-4; Def. Supp. Obj. (Doc. 104) at 1-2. Defendant contends that Jean Boulle's supplemental declaration is untimely and contains inadmissible hearsay and conclusory allegations and that the other documents are not properly authenticated and constitute impermissible hearsay. However, the Court has reviewed the challenged evidence and determines that, even when it is considered, the evidence does not alter the Court's findings and conclusions with respect to the pending motions. Accordingly, Defendant's objections are overruled as moot. *Jones v. United Parcel Serv., Inc.*, No. 3:06-CV-1535-L, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008), *aff'd*, 307 F. App'x 864 (5th Cir. Jan. 23, 2009) (denying as moot an objection to summary judgment evidence where sustaining the objection would not change the outcome).

Plaintiffs object to and move to strike (1) opinions in Steven Dennis's expert report that Plaintiffs never established a legally enforceable trademark and that there is a likelihood of confusion[1] and (2) portions of a declaration by Franco Boulle addressing the parties' business

---

[1]    Plaintiffs also move to strike Defendant's expert report under *Daubert*. *See* Pl. Mot. to Exclude (Doc. 83). However, *Daubert*-type objections, including objections to the methodology used by an expert, are generally not considered at the summary judgment stage. *See U.S. v. JPI Const., L.P.*, No. 3:09-CV-0412-B-BD, 2011 WL

activities and their intent in executing the 1993 Settlement Agreement. Pl. Obj. (Doc. 93). Here as well, the Court has reviewed the challenged evidence and determines that, even when it is considered, the evidence does not alter the Court's findings and conclusions with respect to the pending motions. Accordingly, Plaintiffs' objections are overruled as moot. *Jones*, 2008 WL 2627675, at *6.

### IV. Analysis

The Court first considers Plaintiffs' argument that Defendant's counterclaims and third-party claims are barred because they were released by the parties' 1993 Settlement Agreement.

### A.    Release

Under Texas law,[2] "a release surrenders legal rights or obligations between the parties to an agreement." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (citing *Cox v. Robison*, 150 S.W. 1149, 1155 (Tex. 1912)). A release "operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Id.* (citing *Hart v. Traders & Gen. Ins. Co.*, 189 S.W.2d 493, 494 (Tex. 1945)). In order to be effective, "the releasing instrument must 'mention' the claim to be released." *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Claims not "clearly within the subject matter" of the release are not discharged, even if those claims exist when the release is executed. *Id.* It is not necessary, however, for the parties to

---

6963160, at *6 n.4 (N.D. Tex. Nov. 10, 2011), *rec. adopted*, 2012 WL 43507 (N.D. Tex. Jan. 9, 2012). Accordingly, the Court will consider Plaintiffs' *Daubert* motion separately.

[2] Texas rules of contract construction control the interpretation of the 1993 Settlement Agreement. *Johnson v. Manpower Prof'l Servs., Inc.*, 442 F. App'x 977, 983 (5th Cir. 2011) (citing *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex. 1968) ("The effect of a contract is to be determined by the law intended by the parties to control, and in the absence of a contrary manifestation, the presumption is that the parties contract with reference to where the contract was made.")).

anticipate and explicitly identify every potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 20 S.W.3d 692, 698 (Tex. 2000). Although releases generally contemplate claims existing at the time of execution, a valid release may also encompass future unknown claims. *Id.*

Additionally, a release is subject to the same rules that apply to the interpretation of other contracts. *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex. 1990) (citing *Loy v. Kuykendall,* 347 S.W.2d 726, 728 (Tex. Civ. App.--San Antonio 1961, writ ref'd n.r.e.) ("A release is a contract and the construction thereof is governed by the general rules relating to construction of contracts.")). "[T]he interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the contract as a whole in light of the circumstances present when the contract was entered.'" *Gonzalez v. Denning,* 394 F.3d 388, 392 (5th Cir. 2004) (quoting *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983)). A contract is unambiguous if it is so worded that it can be given a certain or definite legal meaning or interpretation. *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995)). Conversely, a contract is ambiguous when, after applying established rules of construction, the language of the contract is susceptible to two or more reasonable interpretations or meanings. *Id.; see also Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003). However, "[a] contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term." *Gonzalez,* 394 F.3d at 392 (quoting *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines,* 278 F.3d 494, 497 (5th Cir. 2002).

In construing a written contract, the Court's primary concern is to ascertain the true intent of the parties as expressed in the instrument. *Gonzalez,* 394 F.3d at 392; *see also Resolution Trust*

10

*Corp. v. Cramer*, 6 F.3d 1102, 1106 (5th Cir. 1993). "The terms used in the [contract] are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning." *Gonzalez*, 394 F.3d at 392 (quoting *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). Moreover, contracts must be construed in their entirety "so that the effect and meaning of one part on any other part may be determined." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 408 (5th Cir. 2006) (quoting *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980). "[C]ourts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *Id.* (quoting *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)). To the extent possible, the Court should "harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Bank One Texas, N.A. v. FDIC*, 16 F. Supp. 2d 698, 707 (N.D. Tex. 1998) (citing *Coker*, 650 S.W.2d at 393); *see also True Beginnings, LLC v. Spark Network Servs., Inc.*, 631 F. Supp. 2d 849, 853 (N.D. Tex. 2009).

As grounds for their motion, Plaintiffs point to paragraph 10 of the 1993 Settlement Agreement, which provides, in pertinent part:

> Denis Boulle for himself, his employees, agents, servants, representatives, heirs, successors and assigns, and for deBoulle Diamond & Jewelry, Inc., its subsidiary, related and affiliated corporations, businesses, and entities and all persons or entities in privity with them (collectively referred to herein as the "Denis Boulle Releasers") release, acquit, and forever discharge Jean Boulle, his employees, agents, servants, representatives, heirs, successors, assignors and assigns, and their related and affiliated corporations, businesses, and entities and all persons or entities in privity with them (collectively referred to herein as the "Denis Boulle Releasees") from and of *any and all claims, liability or causes of action of any kind whatsoever, at common law, statutory or otherwise, which the Denis Boulle Releasers have or might have, known or unknown, now existing or that might arise hereafter,*

> *against the Denis Boulle Releasees,* including, but not limited to,
> any claims, liability or causes of action arising out of the
> Transaction, including the claims asserted or assertable in the
> Lawsuit, and any claims arising out of the First Lawsuit, including
> the Judgment in the First Lawsuit, the Birchbrook Note and the
> Prior Sales, and related to any dispute asserted or assertable therein
> whether to law or facts or both.

Def. MSJ App. at 91 (emphasis added). Plaintiffs contend that this language should be read to

cover all of Defendant's counterclaims and third-party claims against them in this lawsuit as

Defendant both "had" and "knew of" its trademark claims against Jean Boulle in 1993 because

Denis Boulle was aware that Jean Boulle had used the BOULLE mark in connection with diamond

and jewelry sales in Dallas in the late 1980s and early 1990s.3 Pl. MSJ Br. at 13-14. Defendant

disputes Plaintiffs' construction of the scope of the release and argues that the "subject matter" of

the release is limited to disputes between Denis Boulle and Jean Boulle that arose out of business

deals that the brothers did together prior to 1993. Def. MSJ Resp. at 21.

   Although the parties advance conflicting interpretations as to the scope of the release, the

language is not ambiguous. The 1993 Settlement Agreement, when read in its entirety and

considered in light of the circumstances surrounding its execution, plainly reflects that the subject

matter of the release comprises an unsuccessful business "Transaction" between Jean Boulle and

Denis Boulle, the litigation arising out of that transaction, and other known disputes between the

brothers that had to be resolved prior to Jean Boulle's impending departure from the United States.

Thus, while the release provision states that the released claims "includ[e] but are not limited to"

---

[3] The Settlement Agreement actually contains reciprocal releases, and paragraph 9 contains an identical release of
claims by Jean Boulle and his related entities against Defendant. *See* Def. MSJ App. at 89-90. During oral argument,
Plaintiffs' counsel conceded that, if the release meant what his client says it means, Plaintiffs' claims would also be
barred. Despite this concession, Plaintiffs have not moved to voluntarily dismiss their claims. This seems somewhat
disingenuous, but Plaintiffs contend that they must continue to assert their claims "defensively," in case the Court
disagrees with their interpretation.

the defined disputes, the entire Agreement compels the conclusion that the release does in fact

have limits.

In particular, the final "whereas" paragraph recites the purpose of the entire Agreement:

> WHEREAS, bona fide disputes and controversies exist between the parties, both as to liability and the amount thereof, if any, and the parties have recognized their disputes and controversies, and by reason of such disputes and controversies the parties hereto desire *to compromise and settle all claims and causes of action of any kind whatsoever which the parties have or may have in the future arising out of the Transaction, including the facts and matters set forth in the Lawsuit, the First Lawsuit, the Birchbrook Note and the Prior Sales, to avoid the uncertainty of trial and to buy peace,* and intend that the full terms and conditions of the compromise and settlement be set forth in this Agreement.

Def. MSJ App. at 86-87 (emphasis added).[4] Paragraph 15 similarly contains Jean Boulle and

Denis Boulle's representations that "the Agreement is entered into merely to settle and terminate

the controversy between the parties concerning the disputed claims, avoid litigation, and buy

peace." *Id.* at 93. The parties' intent to "buy peace" is furthered by the brothers' reciprocal

promises (1) in paragraph 12 "not to communicate in writing, verbally or otherwise to third parties

derogatory statements about the other person which cast the other in a false light," *id.* at 92, and (2)

in Paragraphs 5 and 8 that neither "will . . . hold himself out to be associated with [the other] and/or

---

[4] The Agreement specifically defines the Lawsuit as Case No. 92-08126, filed in the 101st Judicial District Court of Dallas County, Texas, *Jean-Raymond Boulle v. Denis Boulle,* in which Jean Boulle alleged certain causes of action against Denis Boulle arising out of the Transaction. Def. MSJ App. at 86. The Transaction refers to the 1988 transaction originally between Jean Boulle, Franco Boulle, and Denis Boulle, for the purpose of cutting and re-selling certain rough diamonds originating in Sierra Leone, West Africa. *Id.* at 85. The First Lawsuit is a case styled *deBoulle Diamond and Jewelry, Inc. v. Jean-Raymond Boulle, Individually,* filed in Dallas County Court at Law Number 1, in which Defendant obtained a default judgment against Jean Boulle in February of 1990. *Id.* at 86. The Birchbrook Note refers to a promissory note executed by Jean Boulle in favor of Denis Boulle in connection with condominium located on Birchbrook Drive in Dallas which Jean Boulle and Denis Boulle had purchased together using loan proceeds provided by American Federal Savings and Richardson Savings and Loan. *Id.* at 86. The Prior Sales include various purchases and sales of jewelry and precious gems between and among the parties, and their affiliated businesses and entities, since 1984, "directly and/or through brokers and/or agents, and/or third parties such as Marc Mermelstein." *Id.*

any business entity owned, operated or controlled by him in any form or manner whatsoever in the future." *Id.* at 88, 89. The Agreement's silence regarding liability for other torts and statutory violations, including claims for trademark infringement and unfair competition, and future wrongs reflects that such claims were not intended to be encompassed by the release.

Contrary to Plaintiffs' assertions, the record does not support an interpretation that the purpose of the 1993 Settlement Agreement was "to settle and release any and all claims the parties had against one another *or might have in the future* so that they could continue operating their competing jewelry businesses without fear of liability." Pl. MSJ Br. at 6 (emphasis added). Plaintiffs' argument relies heavily on the assumption that the release covers the claims at issue in this litigation because the Agreement was executed at a time when the parties were making ongoing -- and infringing -- use of their respective marks. Pl. MSJ Br. at 8; *see also* Pl. Supp. Br. at 6-8. However, this assumption is contrary to the summary judgment evidence, discussed below, which fails to show that Jean Boulle used the BOULLE mark in connection with a jewelry business after 1992. Also, given the number and extent of the disputes specifically included in the subject matter of the release, it would be unreasonable to interpret the Agreement as giving the parties a blank check with respect to their future conduct towards each other. The Agreement simply addresses the brothers' desire to finally resolve their then-outstanding disputes and "wipe the slate clean" before Jean Boulle left the United States.

Plaintiffs further contend that Defendant's counterclaims and third-party claims are barred by the release because its claims were "assertable in the Lawsuit," defined by the Agreement as arising out of 1988 transaction between the brothers to facilitate the cutting and re-selling of rough diamonds from Sierra Leone. Plaintiffs argue that Defendant's current claims were "assertable" in

14

the earlier lawsuit because they are the same claims that existed in 1993 when the parties were using infringing marks to compete with each other in the Dallas diamond and jewelry industry. *See* Pl. Supp. MSJ Br. at 6. However, the claims asserted in this lawsuit are not the same claims that existed in 1993. Instead, the claims Defendant asserts in this lawsuit arise out of Plaintiffs' recent trademark applications and seek to enjoin Plaintiffs' stated intent to resume use of the BOULLE mark in the Dallas jewelry market in the future.

The parties have had a full opportunity to exhaust the issues pertaining to the 1993 Settlement Agreement and Plaintiffs' affirmative defense to Defendant's counterclaims and third-party claims. Nothing in the record creates a genuine dispute that Defendant's claims are barred by the Agreement. Indeed, because the release is unambiguous, the parol evidence adduced by the parties is not admissible to show the parties' intentions. *CBI Indus., Inc.,* 907 S.W.2d at 520 (only where a contract is ambiguous may a court "admit extraneous evidence to determine the true meaning of the instrument"). Accordingly, Plaintiffs are not entitled to summary judgment on their affirmative defense of release.

### B. Trademark Protection

Having determined that this litigation is not barred by the 1993 Settlement Agreement, the Court next considers the parties' cross-motions for summary judgment on issues related to their claims for trademark infringement and unfair competition and their remaining affirmative defenses.

A threshold issue in this case, as in any trademark dispute, is whether the mark or marks at issue qualify for protection. *See, e.g., Dallas Cowboys Football Club, Ltd. v. America's Team Props., Inc.,* 616 F. Supp. 2d 622, 634 (N.D. Tex. 2009). This, in turn, requires the Court to locate

the mark along a "spectrum of distinctiveness."[5] *See Adventure Plus Enters., Inc. v. Gold Suit, Inc.*, Nos. 3:06-CV-2032-BD & 3:07-CV-1315-BD, 2008 WL 3171647, at *1 (N.D. Tex. July 29, 2008) (citing cases). Trademarks can be classified, in increasing order of distinctiveness, as generic, descriptive, suggestive, arbitrary, or fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 844 (5th Cir. 1990). Generic words or phrases are considered the weakest marks and "are *never* eligible for trademark protection." *Union Nat'l Bank*, 909 F.2d at 844 (emphasis in original). Descriptive marks, while not inherently distinctive, may be protected upon a showing of secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000); *see also Union Nat'l Bank*, 909 F.2d at 844. Suggestive, arbitrary, and fanciful marks are considered inherently distinctive even without proof of secondary meaning. *Two Pesos*, 505 U.S. at 768.

### 1.   The DE BOULLE Mark

Defendant's DE BOULLE mark is registered by the USPTO under Trademark No. 3078625 for use in association with the sale of jewelry, diamonds, watches, fine art, jewelry store, and catalog services. Def. MSJ App. at 14-83. This registration is *prima facie* proof that the DE BOULLE mark is distinctive. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 567 (5th Cir. 2005). Although the presumption is rebuttable, *see id.*, Plaintiffs offer no argument, much less evidence, that the mark is generic or merely descriptive in nature. Defendant's mark is thus entitled to protection.

---

[5] "Distinctiveness" is the term used to indicate that a mark serves as a symbol of its origin. *See Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 425 n.3 (5th Cir. 1984).

## 2. The BOULLE Mark

Plaintiffs' BOULLE mark is Jean Boulle's surname. A surname is classified as a descriptive word mark. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 291 n.6 (5th Cir. 2004) (citing *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)); *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 155 (5th Cir. 1985). Accordingly, Plaintiffs must prove that the name has acquired a secondary meaning. *See Vais Arms*, 383 F.3d at 291 n.6; *see also Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 118 (5th Cir. 1979) (burden of proof for establishing secondary meaning "rests at all times with the plaintiff"). Secondary meaning exists when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008) (quoting *Wal-Mart Stores*, 529 U.S. at 211). The relevant inquiry is one of the public's mental association between the mark and the alleged mark holder. *Id.* A mark acquires secondary meaning when it "has come through use to be uniquely associated with a specific source." *Id.* (citing *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998)). In the Fifth Circuit, courts apply a multi-factor test to determine secondary meaning. *See id.* The factors include: (1) length and manner of use of the mark, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the mark. *Id.; Dallas Cowboys Football Club*, 616 F. Supp. 2d at 636. These factors in combination may show that consumers consider a mark to be an indicator of source even if each factor alone would not prove secondary meaning. *Smack Apparel Co.*, 550 F.3d at 476.

17

The summary judgment record indicates that Jean Boulle made continuous, but not consistent, use of the BOULLE mark from 1984 to 1992 in connection with a diamond and jewelry business operating in Dallas. For example, Plaintiffs have produced invoices and sales slips that show Jean Boulle bought and sold diamonds and other fine jewelry to customers in Dallas between 1987 and 1992. *See* Pl. Supp. App. at 174-217; Def. Supp. Mot. App. at 9-14. Some of the invoices document jewelry sales by "Boulle, Inc." and bear the name and address of Boulle Inc. at the top. *Id.* at 174-90. Other invoices document sales by "Boulle Diamond Merchants" and bear a stylized logo that includes the Boulle name and a shield. *Id.* at 193-212. Two invoices document sales by "Boulle Diamonds and Fine Jewelry" and bear a different logo that includes only the name Boulle. *Id.* at 191-92. Five invoices document private sales by Jean Boulle operating out of his apartment and bear the name "Boulle" in capital letters. Def. Supp. Mot. App. at 9-14. The remaining invoices were created by Defendant and document sales of loose diamonds by Defendant to Boulle, Inc. Pl. Supp. App. at 213-217. These invoices bear the DE BOULLE mark. *Id.* The record also includes some evidence that Jean Boulle advertised and promoted a diamond and jewelry business in Dallas using various names between 1984 and 1986 in print and on television. *Id.* at 161-62, 167, 170-72. The television spot ran in 1984 and described two loose sapphires donated by "Boulle and European Diamonds" to a charity auction benefitting KERA, PBS channel 13. *Id.* at 161-62. The print advertisements appeared in the March 8, 1986 edition of the Park Cities People newspaper and the December 1986 edition of Texas Homes Magazine. *Id.* at 167, 170-72. A copy of the Texas Homes Magazine advertisement bears a picture of a large gemstone ring offered by "Boulle." *Id.* at 172. There is also evidence that Jean Boulle, operating as Boulle Inc. or Boulle and European Diamonds, promoted his business by donating jewelry or gift certificates for jewelry to

18

local charity events in 1985. *Id.* at 159-60, 164-65. Contrary to Plaintiffs' assertions however, *see* Pl. Reply Br. at 36, this evidence of Jean Boulle's use of the BOULLE mark will not, by itself, establish secondary meaning. *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir. 1979) ("[C]ourts have summarily rejected claims of secondary meaning predicated solely upon the continued use of the mark for many years."); *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1301 (5th Cir. 1985) (evidence of use alone is not sufficient to raise a factual issue on secondary meaning); *Bank of Texas v. Commerce Sw., Inc.*, 741 F.2d 785, 788 (5th Cir. 1984) (same).

The critical inquiry on the issue of secondary meaning is whether in the minds of ordinary consumers the disputed mark denotes "a single thing coming from a single source." *Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 578 (W.D. Tex. July 8, 2010), *aff'd*, 430 F. App'x 359 (5th Cir. 2011) (quoting *Aloe Creme Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970)). However, Plaintiffs have failed to produce any consumer-survey evidence or direct consumer testimony regarding the public's mental association between the BOULLE mark and Jean Boulle, despite the Fifth Circuit's unmistakable preference for such evidence. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248 (5th Cir. 2010) ("We have consistently expressed a preference for 'an objective survey of the public's perception of' the mark at issue."). None of the evidence on which Plaintiffs rely raises a genuine dispute that Jean Boulle's variable use of the BOULLE mark was effective in altering the meaning of the term in the minds of consumers. There is no evidence of how the jewelry sales by the different Boulle-named businesses impacted the secondary meaning of the BOULLE mark. *See Honestech, Inc.*, 725 F. Supp. 2d at 579 (citing *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, No. 3:02-CV-2518-G, 2003 WL 23175436, at *4 (N.D. Tex. Aug. 15, 2003) ("[U]nadorned statement [about volume of sales],

19

absent supporting evidence demonstrating how [plaintiff]'s annual sales impart secondary meaning to the mark . . . , cannot serve as a basis for secondary meaning."). Nor is there any evidence of the extent of the audience reached by Jean Boulle's limited advertising and promotional efforts or that such efforts were successful in establishing an association between the mark and Jean Boulle. *See Amazing Spaces*, 608 F.3d at 248 (relevant inquiry focuses not on the extent of a party's promotional efforts, but the effectiveness of those efforts in altering the meaning of the term to the consuming public). Plaintiffs contend that (1) Defendant's expert opined that Dallas consumers would associate BOULLE with Jean Boulle; (2) Jean Boulle testified that consumers associate the BOULLE mark with him personally; and (3) Denis Boulle admitted that customers coming into his store associated the Boulle diamond and jewelry business with Jean Boulle. Pl. Reply Br. at 37. The Court does not agree that Plaintiffs have accurately described the evidence in the record, but even if they had, such conclusory and self-serving statements are insufficient to demonstrate that the public associates the BOULLE mark with Jean Boulle. *See Deltona Transformer Corp. v. Wal-Mart Stores, Inc.*, 115 F. Supp. 2d 1361, 1367-68 (M.D. Fla. 2000) (finding no secondary meaning where plaintiff's "evidence consisted only of conclusory allegations and self-serving statements").

Considering the totality of the relevant factors and viewing the summary judgment evidence in the light most favorable to Plaintiffs, the Court determines that Plaintiffs have failed to demonstrate that a genuine dispute exists as to whether the BOULLE mark has acquired a secondary meaning in the diamond and jewelry business in the United States. As a result, Plaintiffs cannot prove that BOULLE is a protectable mark. Defendant is therefore entitled to summary judgment on Plaintiffs' trademark infringement and unfair competition claims. *Cathey Assocs.,*

*Inc. v. Beougher*, 95 F. Supp. 2d 643, 653 (N.D. Tex. 2000) (holding summary judgment appropriate where proponent of an alleged trademark failed to raise a material issue of fact on the question of secondary meaning).

### C. Abandonment

Even if the evidence were sufficient to raise a genuine dispute as to whether the BOULLE mark is protectable, Defendant is still entitled to summary judgment on all of Plaintiffs' trademark infringement and unfair competition claims on grounds that Jean Boulle abandoned the mark. A trademark is deemed abandoned if the owner has discontinued use of the mark with the intent not to resume such use. *See Vais Arms*, 383 F.3d at 293 (citing 15 U.S.C. § 1127). "Intent not to resume may be inferred from circumstances," and "[n]onuse for 3 consecutive years shall be *prima facie* evidence of abandonment." 15 U.S.C. § 1127. The party claiming abandonment has the burden of proof, but when a *prima facie* case of abandonment exists because of nonuse of the mark for three consecutive years, the burden shifts to the owner of the mark to demonstrate that circumstances do not justify the inference of intent not to resume use. *Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 99 (5th Cir. 1983).

Here, the evidence shows that Jean Boulle's last use of the BOULLE mark in connection with a diamond and jewelry business in the United States occurred in 1992. *See* Def. Supp. Mot. App. at 10-12. The record contains no competent summary judgment evidence of further use of the mark by Plaintiffs until 2012. Plaintiffs' nonuse of the BOULLE mark for twenty years gives rise to a presumption that Plaintiffs abandoned the BOULLE mark. 15 U.S.C. § 1127. To overcome this presumption, Plaintiffs must demonstrate that the circumstances do not justify the inference of

intent not to resume use. *Vais Arms*, 383 F.3d at 293. Plaintiffs contend that evidence of the following activities rebuts the presumption of abandonment:

- Jean Boulle lived in Dallas regularly until at least 1993;

- After he left Dallas, Jean Boulle regularly travelled to Dallas about five times per year;

- Jean Boulle again resided full-time in Dallas from the late 1990s to approximately 2002;

- When he was not residing in Dallas, Jean Boulle, through Boulle, Ltd. and other business entities, continued to engage in the diamond and jewelry business in Dallas on a regular basis;

- During the time period of 1990 to 2012, Boulle engaged in the diamond and jewelry business in Dallas on a regular basis;

- Boulle entities involved in the diamond and jewelry business during this timeframe advertised, published catalogs and maintained a website using the Boulle mark;

- In December 2009, Jean Boulle formed Boulle, Ltd. and assigned rights in the Boulle mark to this entity; and

- In May 2010, Boulle, Ltd. filed multiple trademark applications for the Boulle mark, including several in diamond and jewelry categories.

Pl. Reply Br. at 33.

The record, however, does not support Plaintiffs' contentions. First, the fact that Jean Boulle resided in or travelled to Dallas is not probative of his use of the BOULLE mark. Further, Jean Boulle's testimony that he engaged in the diamond and jewelry business in Dallas on a regular basis during the period between 1990 and 2012, *see* Pl. Supp. App. at 219-24 & 232-34, is wholly unsubstantiated. As noted above, the evidence shows that Jean Boulle's last diamond and jewelry

transaction in Dallas occurred in 1992. *See* Def. Supp. Mot. App. at 10-12. There is no evidence that Jean Boulle or any related entity conducted any particular diamond or jewelry business in the United States after 1992. More significantly, there is no evidence that Jean Boulle or a Boulle entity used the BOULLE mark in connection with any domestic diamond or jewelry transaction after that date. Nor does evidence of any conduct by Plaintiffs in 2009 or 2010, after more than fifteen years of nonuse, cure the abandonment. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1550 (11th Cir. 1986) (rights lost as a result of abandonment are not revived by subsequent use); *Gen. Cigar Co., Inc. v. G.D.M. Inc.,* 988 F. Supp. 647, 659 (S.D.N.Y. 1997) ("[A] party who has abandoned its trademark rights cannot revive those rights by resumed use.") (citing 2 McCarthy, Trademarks & Unfair Competition, § 17:3 at 17-4 (1996)). Finally, to the extent the record contains other evidence of use of the BOULLE mark outside the United States, such as at trade shows in Monaco or on a boat in the Mediterranean, such use does not show an intent to use the mark inside the United States. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 153 (2d Cir. 2007) (ongoing foreign use of a mark, by itself, does not support an inference that the owner intends to re-employ a presumptively abandoned mark in the United States). Plaintiffs have thus failed to demonstrate a genuine dispute exists as to the issue of their intent to resume use of the BOULLE mark. Jean Boulle is thus deemed to have abandoned his rights to the BOULLE mark for more than three years, and Defendant is entitled to summary judgment on Plaintiffs' claims.

### D. Laches and Acquiescence

The finding that Jean Boulle abandoned the BOULLE mark also prevents Plaintiffs from prevailing on their remaining affirmative defenses to Defendant's counterclaims and third-party claims. Laches and acquiescence are both equitable defenses to an action to enforce a trademark.

23

Laches is an inexcusable delay that results in prejudice to the defendant. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000). To prevail on a defense of laches, the alleged infringer must establish "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Am. Rice*, 518 F.3d at 334. Acquiescence involves the trademark owner's implicit or explicit assurances to the alleged infringer which induce reliance by the alleged infringer. *Conan Props.*, 752 F.2d at 153. To establish the defense of acquiescence, the alleged infringer must prove that: (1) the trademark owner knew or should have known of the alleged infringer's use of the mark; (2) the owner made implicit or explicit assurances to the alleged infringer; and (3) the alleged infringer relied on the assurances. *Id.*

Plaintiffs contend that laches bars Defendant's claims because it knew Jean Boulle was using the BOULLE mark from 1986 to at least 1990, but failed to take any action to prevent such use until 2012. Plaintiffs similarly contend that Defendant's claims are barred by acquiescence because Defendant never protested Plaintiffs' use of the mark, entered into the 1993 Settlement Agreement, and did business with Jean Boulle. As noted above, however, the evidence establishes that Jean Boulle's last use of the BOULLE mark in connection with a diamond and jewelry business in the United States occurred in 1992. Any delay by Defendant in asserting its trademark rights after 1992 was excused because there was no conduct to enjoin until at least 2011, when Plaintiffs first challenged the DE BOULLE mark before the USPTO. Since then, Defendant has not unreasonably delayed in defending its rights. Additionally, there is no evidence that Plaintiffs engaged in infringing activity after 1992. Jean Boulle's only use of the BOULLE mark was outside the United States. Plaintiffs have not shown that Defendant knew or should have known of

24

Plaintiffs' use of the BOULLE mark outside the United States after 1992. Even if Defendant did know of such use, foreign use of a mark is not effective to create trademark rights in the United States. *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate*, 440 F. Supp. 2d 249, 269 (S.D.N.Y. 2006) (commercial "use of a mark overseas cannot form the basis for a holding of priority trademark use" in the United States). Therefore, Plaintiffs' motion for summary judgment as to the affirmative defenses of laches and acquiescence should be denied.

Because Plaintiff's claims fail on other grounds, the Court pretermits consideration of Defendant's alternate argument that Plaintiff's claims are barred by the doctrines of laches and estoppel.

### E. Trademark Infringement

The protectability of Defendant's mark is only one element in the infringement analysis. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) ("The Lanham Act provides a cause of action for infringement where one 'uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution[,] or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.'"); *see also Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App. 2001, pet. denied) (noting that the test for trademark infringement is the same under federal law and Texas common law). To prove trademark infringement, Defendant also must show that Plaintiffs' use of BOULLE is likely to cause confusion among consumers as to the source, affiliation, or sponsorship of its products or services. *See Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 483 (5th Cir. 2004) (citing 15 U.S.C. § 1114(1)). "Likelihood of confusion"

requires a probability of confusion, not merely a possibility of confusion. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). In the Fifth Circuit, courts examine several "digits of confusion" to determine whether confusion is likely, including: (1) the strength of the senior mark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser identity, (5) advertising media similarity, (6) alleged infringer's intent, (7) actual confusion, and (8) care exercised by potential purchasers. *Am. Rice*, 518 F.3d at 329. This list of "digits" is not exhaustive, and no one factor is dispositive. *Xtreme Lashes*, 576 F.3d at 227. The weight accorded to each digit may differ from case to case depending on the particular facts and circumstances involved. *Id.*

Defendant does not address the digits of confusion or particularly identify any evidence in the record bearing on those factors. Instead, Defendant contends that there is no dispute that Plaintiffs' use of BOULLE is likely to cause confusion among consumers because (1) the USPTO determined the BOULLE mark creates a likelihood of confusion when it rejected Boulle Ltd.'s trademark application and (2) the parties have asserted "mirror image" infringement claims against each other and pleaded that the marks will create confusion. Def. MSJ Br. at 44. Defendant cites no Fifth Circuit authority for its proposition that the USPTO's opinion is entitled to great weight, and the Court observes that other circuit courts have rejected similar arguments. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220-21 (3rd Cir. 2000) (holding that court need not defer to determination by USPTO on issue of likelihood of confusion in a trademark infringement and unfair competition action, especially where the PTO officer may not have access to all the information that might inform a likelihood-of-confusion analysis); *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 200 F.3d 929, 934 (6th Cir. 1999) (same); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970) (same). Further,

26

the allegations set forth in the parties' pleadings are not sufficient by themselves to defeat summary judgment. *See Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) (stating that, although the parties filed cross-motions for summary judgment on the issue of the likelihood of confusion, granting summary judgment was improper).

While the Court is under no obligation to scour the record for evidence, it has carefully reviewed the voluminous summary judgment record with an eye toward the digits of confusion. The Court observes that the DE BOULLE mark is distinctive and that the BOULLE mark is highly similar in appearance. It also appears that the diamonds and jewelry products offered in connection with the disputed marks are substantially identical. However, the record contains almost no evidence as to outlet and purchaser identity, the similarity of advertising media, or the care exercised by potential purchasers. There is no evidence of actual confusion, and the facts are in dispute with regard to Plaintiffs' intent. Thus, the Court concludes that the facts are sufficient to create a genuine dispute as to the issue of likelihood of confusion, but they do not establish beyond peradventure this critical element of Defendant's cause of action. Accordingly, Defendant is not entitled to summary judgment on its counterclaims and third party claims against Plaintiffs. [6]

## RECOMMENDATION

As set forth herein, the Court finds and concludes that Plaintiffs are not entitled to summary judgment on Defendant's counterclaims and third-party claims for trademark infringement and unfair competition under federal and state law because they have not established beyond peradventure that such claims were released by the 1993 Settlement Agreement. Nor have

---

[6] This recommendation is consistent with Fifth Circuit authority that reflects a rule that summary judgment on the issue of the likelihood of confusion should "at the very least, be approached with the utmost caution." *See New Century Fin. Inc. v. New Century Fin. Corp.*, No. C-04-437, 2005 WL 2453204, at *2 (S. D.Tex. Oct. 4, 2005) (collecting cases that look with disfavor on deciding the "inherently factual" question of likelihood of confusion at the summary judgment stage).

Plaintiffs established beyond peradventure that Defendant's counterclaims and third-party claims are barred by the doctrines of laches or acquiescence. The Court further finds and concludes that Defendant is entitled to summary judgment on all of Plaintiffs' claims and causes of action because the evidence fails to raise a genuine dispute that the BOULLE mark acquired secondary meaning and qualifies for trademark protection and, even if the BOULLE mark did qualify for protection, Jean Boulle abandoned his rights after 1992 and may not sue to enforce them now. However, Defendant is not entitled to summary judgment on its own claims because it failed to establish beyond peradventure on the record before the Court that there is a likelihood of confusion between the parties' marks.

Accordingly, the Court recommends that (1) Plaintiffs' motion for summary judgment (Doc. 68) should be DENIED and (2) Defendant's cross-motion for summary judgment (Doc. 86) and supplemental motion for summary judgment (Doc. 147) should be GRANTED with respect to Plaintiffs' claims and causes of action and DENIED with respect to its own claims for trademark infringement and unfair competition. Plaintiffs' claims and causes of action should be dismissed with prejudice. Defendant's counterclaims and third-party claims should proceed to trial in the District Court.

SO RECOMMENDED, July 31, 2014.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).