

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DE BOULLE DIAMOND & JEWELRY, INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3: 3:12-CV-1462-L (BF) |
| | § | |
| BOULLE, LTD. and JEAN-RAYMOND BOULLE, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM ORDER

The District Court has referred Defendants Boulle, Ltd. and Jean-Raymond Boulle's[1] motion

to exclude certain testimony by Plaintiff De Boulle Diamond & Jewelry, Inc.'s expert to the U.S.

Magistrate Judge for determination. For the following reasons, Defendants' motion is GRANTED

in part and DENIED in part.

### Background

Plaintiff owns and operates a retail diamond and jewelry business in Dallas using the name

"De Boulle." Plaintiff also owns a federally registered trademark for the name "DE BOULLE."

Defendants use a BOULLE mark in connection with various international marketing activities. By

this lawsuit, Plaintiff contends that Defendants' BOULLE mark is confusingly similar to its federally

registered DE BOULLE mark and that Defendants' use of the BOULLE mark constitutes trademark

---

[1] On August 29, 2014, the District Court realigned the parties in this case, such that De Boulle Diamond & Jewelry, Inc. is now proceeding as the plaintiff and Boulle, Ltd. and Jean-Raymond Boulle are proceeding as defendants. *See* Memorandum Opinion and Order (Doc. 176) at 14.

infringement and unfair competition under state and federal law. Plaintiff's claims are specially set for jury trial beginning September 29, 2014.

In anticipation of trial, Defendants move to exclude certain opinions by Plaintiff's expert Steven Dennis, a consultant with experience in branding and marketing in high-end, luxury markets. Specifically, Defendants seek to exclude opinion testimony by Mr. Dennis that:

> 1.      Jean-Raymond Boulle never established a common law trademark in the United States;
>
> 2.      the DE BOULLE and BOULLE marks are confusingly similar; and
>
> 3.      Plaintiff could be harmed in the future by the potential association among consumers between DE BOULLE and Jean-Raymond Boulle.

*See* Pl. Mot. at 2-3; *see also id.*, Ex. A at 8, 11, and 14. Defendants contend that none of these opinions are admissible under *Daubert*. Pl. Mot. at 3. Defendants further contend that Mr. Dennis is not qualified to give the first two opinions and that the third opinion is irrelevant, speculative, and unduly prejudicial.[2] The issues have been fully briefed by the parties, and the motion is ripe for determination.

### Legal Standards

Rule 702 of the Federal Rules of Evidenc governs the admissibility of expert testimony. This rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

---

[2] Defendants also object to the third opinion on grounds that Plaintiff refused to produce copies of the material on which the opinion was based. However, it appears that Mr. Dennis remedied this omission in connection with Plaintiff's response to the motion. *See* Pl. Resp. App., Ex. A-G.

> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon sufficient facts or
> data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

FED. R. EVID. 702.  Rule 702 further incorporates the principles first articulated by the Supreme

Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See* FED. R. EVID.

702, adv. comm. notes (2000).  Under *Daubert*, expert testimony is admissible only if the proponent

demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the

evidence is reliable.  *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).  The trial

court is charged with making this preliminary determination under Fed. R. Evid. 104(a).[3]  *Andrade*

*Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 617, 620 (E.D. Tex. 1998); *see also* FED.

R. EVID. 702, adv. comm. notes (2000).

    *Daubert* lists five non-exclusive factors to consider when assessing the scientific validity or

reliability of expert testimony:

> 1.      Whether the theory or technique has been tested;
>
> 2.      Whether the theory or technique has been subjected to peer
> review and publication;
>
> 3.      The known or potential rate of error of the method used;
>
> 4.      The existence and maintenance of standards and controls in
> the methodology; and

---

[3]  Rule 104(a) provides:

> Preliminary questions concerning the qualification of a person to be a witness, the
> existence of a privilege, or the admissibility of evidence shall be determined by the
> court, subject to the provisions of subdivision (b). In making its determination it is
> not bound by the rules of evidence except those with respect to privileges.

FED. R. EVID. 104(a).

> 5.      Whether the theory or method has been generally accepted by
> the scientific community.

*Daubert*, 509 U.S. at 591-95. These factors are not necessarily limited to scientific evidence and

may be applicable to testimony offered by non-scientific experts, depending upon "the particular

circumstances of the particular case at issue." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,

150 (1999). In either case, the *Daubert* analysis focuses on the reasoning or methodology employed

by the expert, not the ultimate conclusion. *Watkins*, 121 F.3d at 989. The purpose of such an inquiry

is "to make certain that an expert, whether basing testimony upon professional studies or personal

experience, employs in the courtroom the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field." *Skidmore v. Precision Printing &Packaging, Inc.*, 188

F.3d 606, 618 (5th Cir. 1999) (quoting *Kumho Tire*, 526 U.S. at 151). Thus, the court "must review

only the reasonableness of the expert's use of such an approach, together with his particular method

of analyzing the data so obtained, to draw a conclusion regarding the specific matter to which the

expert testimony is directly relevant." *American Tourmaline Fields v. Int'l Paper Co.*, No. 3:96-CV-

3363-D, 1999 WL 242690, at *2 (N.D. Tex. Apr. 19, 1999) (citing *Kumho Tire*, 526 U.S. at 153).

The test of reliability is necessarily a flexible one. As the Supreme Court has recognized, the

Daubert factors "may or may not be pertinent in assessing reliability, depending on the nature of the

issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at

at 150; *see also Watkins*, 121 F.3d at 988-89 ("Not every guidepost outlined in *Daubert* will

necessarily apply to expert testimony[.]"). A trial court has wide latitude in deciding how to

determine reliability, just as it has considerable discretion with respect to the ultimate reliability

determination. *Kumho Tire*, 526 U.S. at 153. Moreover, "the rejection of expert testimony is the

4

exception rather than the rule." *See* FED. R. EVID. 702, adv. comm. notes (2000). *Daubert* did not

work a seachange over federal evidence law, and "the trial court's role as gatekeeper is not intended

to serve as a replacement for the adversary system." *See id.* (quoting *United States v. 14.38 Acres*

*of Land, More or Less, Situated in Leflore Cnty.*, 80 F.3d 1074, 1078 (5th Cir. 1996). Even after

*Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction

on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

evidence." *Daubert*, 509 U.S. 596; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d

Cir. 1994) ("The grounds for the expert's opinion merely have to be good, they do not have to be

perfect.").

### Analysis

The Court initially observes that Plaintiff's claims for trademark infringement, unfair

competition, misappropriation, and state-law dilution are the only claims that survived summary

judgment. *See* Mem. Op. and Order dated 8/29/14 (Doc. 175). This Court previously determined,

and the District Court agreed, that Plaintiff was entitled to summary judgment on Defendants' claims

for trademark infringement and unfair competition because Defendants failed to demonstrate that

BOULLE was a protectable mark or that the mark had acquired a secondary meaning in the diamond

and jewelry business in the United States. The Court further determined that, even if the BOULLE

mark was protectable, Plaintiff was entitled to summary judgment on Defendants' claims because

the evidence established that Jean Boulle abandoned the BOULLE mark after 1992. Mr. Dennis's

opinion that Jean Boulle never established a protectable mark in the United States will not assist the

jury in determining any disputed fact relevant to the remaining claims. Accordingly, Defendants'

motion is granted with respect to Plaintiff's expert's opinion that Defendants never established BOULLE as a trademark.

Defendants' motion is also granted with respect to Mr. Dennis's opinion that any BOULLE mark is "confusingly similar" to the DE BOULLE mark. Likelihood of confusion is an essential element of Plaintiff's remaining trademark infringement and unfair competition claims. *Marathon Mfg. Co. v. Enerlite Products Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) ("The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion."). In the Fifth Circuit, the following nonexclusive factors are relevant to the determination of whether a likelihood of confusion exists: (1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) any evidence of actual confusion; and (8) the degree of care exercised by potential purchasers. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). Courts may allow expert opinion testimony regarding these factors, or "digits of confusion," if the testimony would assist the trier of fact in understanding the evidence relating to the likelihood of confusion. *See, e.g., Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 830-831 (5th Cir. 1998). However, a court may exclude expert opinion testimony on the likelihood of confusion if the testimony concerns matters within the everyday knowledge and experience of a lay juror. *See, e.g., Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 398 (9th Cir. 1982) (stating, in a trademark infringement case, the similarity or dissimilarity of two words is easily evaluated by laymen and "[i]t is highly doubtful that expert testimony on the subject . . .

would be of any real assistance to the trier of fact.  Certainly it would be well within the discretion

of the trial judge to exclude the expert opinion evidence under Fed. R. Evid. 702.").

Here, Mr. Dennis's opinion that the BOULLE mark is "confusingly similar" to the DE

BOULLE mark would not be helpful to the jury because it is primarily based on his personal

observations regarding the similarities between the marks. *See* Def. Mot., Ex. A at 11-12.  Although

Mr. Dennis has extensive experience with and knowledge of luxury retail markets, he does not rely

on any specialized knowledge in forming his opinions.  He simply compares the "sight and sound"

of the different marks and examines the similarities of their various components.  *See id.* (setting

forth observations that (a) the BOULLE mark "closely resembles" the DE BOULLE mark in sight

and sound; (b) "Boulle" is the dominant component of Plaintiff's branding support materials and

signage; (c) the appearance of the BOULLE logo-type is evocative of the letters "DB" which is

suggestive of DE BOULLE; and (d) the BOULLE logo is similar in appearance to the DE BOULLE

"bug" that is commonly featured in Plaintiff's branding and packaging).  Mr. Dennis also relies on

deposition testimony, pleadings filed in this case, conclusions by the USPTO, and the results of basic

"Google searches" combining "Boulle" and "common jewelry shopping terms," which all

acknowledge or suggest some degree of similarity between the marks. *See id.* at 12-13.  None of this

evidence requires any special knowledge, skill, or experience to interpret.  The jury is fully capable

of considering the same evidence, provided it is admitted at trial, and making its own determination

regarding any similarities between the marks.  Under these circumstances, Mr. Dennis's opinion that

the BOULLE mark is "confusingly similar" to the DE BOULLE mark is properly excluded. *See*

*Chesebrough-Pond's*, 666 F.2d at 398; *see also Int'l Market Brands v. Martin Int'l Corp.*, 882 F.

Supp. 2d 809,  (W.D. Pa. 2012) (excluding expert testimony as to degree of similarity between the

parties' marks because jury did not need assistance to see such plain observation); *JIPC Mgmt., Inc.*

*v. Incredible Pizza Co., Inc.*, No. CV 08-04310 MMM (PLAx), 2009 WL 8591607, at *3 (C.D. Cal.

July 14, 2009) (excluding expert testimony that consisted largely of personal observations and

conclusions respecting factual issues within the province of the lay jury); *Patsy's Italian Rest., Inc.*

*v. Banas*, 531 F. Supp. 2d 483, 486 (E.D.N.Y. 2008) (excluding opinion testimony based solely on

expert's personal opinion on the issue of likelihood of confusion); *Malletier v. Dooney & Bourke,*

*Inc.*, 525 F. Supp. 2d 558, 570 (S.D.N.Y. 2007) (adopting a special master's recommendation that

an expert report be excluded because testimony on the similarity of colors between the parties'

handbags would not be helpful to the jury because the jury members can observe for themselves

whether the parties' marks are confusingly similar); *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F.

Supp. 2d 335, 377 (D. N.J. 2002) (excluding opinion testimony regarding likelihood of confusion

based primarily on a subjective evaluation of the marks in light of experts' experience in the relevant

industry).

    The Court comes to a different conclusion with respect to Mr. Dennis's opinion that the

potential negative association of the BOULLE mark with Jean Boulle risks tarnishment and negative

financial consequences to Plaintiff and its DE BOULLE mark. *See* Def. Mot., Ex. A. at 14. Mr.

Dennis's opinion is purportedly based on (1) his specialized knowledge as an expert on luxury retail

branding and consumer perception and (2) publicly available information that Jean Boule has a

"reputation for involvement in the blood diamond trade." Plf. Resp. at 7. The "publicly available

information" on which Mr. Dennis relies includes books, articles, and results from "simple Google

searches of 'Jean-Raymond Boulle'" that report on Jean Boulle's alleged involvement with

mercenaries connected to diamond mining and exploration in South Africa. Def. Mot., Ex. A. at 14.

According to Plaintiff and its expert, the mere existence of these reports casts Jean Boulle in such a negative light that any association between Jean Boulle and Plaintiff that would arise from Defendants' use of the BOULLE mark would tarnish consumers' perceptions of Plaintiff. *See id.*; Pl. Resp. at 8, 9-10. Defendants dispute the accusations of Jean Boulle's involvement in the "blood diamond" industry and object that Mr. Dennis's opinion is irrelevant, speculative, prejudicial, and inadmissible under *Daubert*.

Contrary to Defendants' objections, Mr. Dennis's opinion on tarnishment is potentially relevant to Plaintiff's surviving claims for unfair competition and state-law dilution. *See* TEX. BUS. & COM. CODE § 16.29 (applicable anti-dilution statute provides relief to owners whose distinctive marks are diluted through blurring or tarnishment). Further, to the extent Defendants object that Mr. Dennis's opinion is fundamentally flawed because it is based on a convoluted series of speculative hypothetical assumptions, those objections go to the weight of the opinion. *See 14.38 Acres of Land, More or Less*, 80 F.3d at 1077 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."). The challenged opinion is not so unreliable that it warrants exclusion at this stage of the litigation. Defendants' counsel is free to cross-examine Mr. Dennis at trial to test his assumptions. The Court thus denies Defendant's motion under Fed. R. Evid. 702.

Defendants also object that Mr. Dennis's final opinion should be excluded under Fed. R. Evid. 403 because it is more prejudicial than probative. This same objection is the subject of a newly-filed motion *in limine* pending before the District Court. *See* Doc. 176. By their new motion, Defendants seek to exclude not only Mr. Dennis's opinion on tarnishment, but also any evidence regarding Jean Boulle's alleged activities in the diamond mining business. *Id.* at 2, 11-20.

Defendants specifically object to articles and other "hearsay evidence" that accuse Jean Boulle of being involved with African mercenaries and the "blood diamond" industry. *Id.* The Court determines that Defendants' Rule 403 objection is properly addressed as part of the motion *in limine* where the District Court can consider the probative value and potential prejudice of the entire category of evidence, as well as other pertinent factors such as the District Court's ability to manage the potential for such evidence to cause undue delay or waste time.

## CONCLUSION

For the reasons stated, Boulle, Ltd. and Jean-Raymond Boulle's Motion to Exclude Testimony of Steven Dennis (Doc. 83) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Mr. Dennis's opinions that (1) Jean-Raymond Boulle never established a common law trademark in the United States and (2) the DE BOULLE and BOULLE marks are confusingly similar. In all other respects, the motion is DENIED without prejudice.

SO ORDERED, September 5, 2014.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE