## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DE BOULLE DIAMOND &** | § | |
| **JEWELRY, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-1462-L** |
| | § | |
| **BOULLE, LTD. and JEAN-RAYMOND** | § | |
| **BOULLE,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Entry of Judgment (Doc. 279), filed January 27, 2015; and De Boulle's Motion for a Finding that this is an "Exceptional Case" (Doc. 280), filed January 27, 2015. After careful consideration of the court's Memorandum Opinion and Order (Doc. 175), filed August 29, 2014; the court's other pretrial rulings; the Court's Pretrial Order (Doc. 240), filed January 8, 2015; the Court's Charge to the Jury (Doc. 275), filed January 21, 2015; the Jury Verdict (Doc. 276), filed January 23, 2015; the court's ruling on Defendants' Rule 50 Motion; and the motion, briefs, replies, record, appendices, and applicable law, the court **grants in part** and **denies in part** Plaintiff's Motion for Entry of Judgment and **denies** De Boulle's Motion for a Finding that this is an "Exceptional Case."

## I.     Plaintiff's Motion for Entry of Judgment

Plaintiff moved for entry of judgment and submitted a proposed judgment. Defendants objected to portions of Plaintiff's proposal and submitted a proposed judgment of their own. The court addresses the parties' dispute concerning the appropriate language for the permanent

injunction and final judgment.  The court has resolved the parties' objections and has made all findings and determinations necessary for the issuance of the judgment and permanent injunction.

## A.    Background Findings

1.      In 2006, the United States Patent and Trademark Office ("USPTO") issued a trademark registration to De Boulle for the mark DE BOULLE, Reg. No. 3,078,625, for use in the sale of jewelry, diamonds, watches, timepieces, fine art, jewelry store, and mail order and electronic catalog services featuring jewelry. In this Permanent Injunction and Final Judgment, the "DE BOULLE Mark" refers to this registered trademark and all ancillary common law rights owned by De Boulle.

2.      In 2010 and 2013, Boulle, Ltd. applied for the following trademarks with the USPTO:

a.      Application 85/040,020 for the mark BOULLE for "jewelry, watches, clocks and timepieces; diamonds, precious and semi-precious stones" in International Class 14;

b.      Application 85/040,288 for the mark BOULLE for "paper, cardboard and goods made from these materials, not included in other classes, in the nature of fine art, namely, paintings" in International Class 16;

c.      Application 85/040,274 for the mark BOULLE for "furniture; works of art of wood, wax, plaster or plastic" in International Class 20;

d.      Application 85/040,098 for the mark BOULLE for "wholesale and retail store services for diamonds, precious and

semi-precious stones; online wholesale and retail store services for diamonds, precious and semi-precious stones" in International Class 35;

e.      Application 85/040,231 for the mark BOULLE for "processing of raw diamonds, namely, diamond cutting services" in International Class 40;

f.      Applications 85/859,699 and 85/859,706, for the marks BB BOULLE JEAN BOULLE DIAMONDS, and Design, and BB JEAN BOULLE DIAMONDS, and Design, for "jewelry, watches, clocks and timepieces; diamonds, precious and semi-precious stones" in International Class 14; for "furniture, works of art of wood, wax, plaster or plastic" in International Class 20; for "advertising; business management; business administration; performing office functions" in International Class 35; and for "treatment of materials; processing of diamonds and other precious and semiprecious stones" in International Class 40.

g.      Application 86/141,196 for the mark ANDRE-CHARLE;S BOULLE, for "jewelry, watches, clocks and timepieces; diamonds, precious and semi-precious stones" in International Class 14 and "furniture, works of art of wood, wax, plaster or plastic" in International Class 20.

3.      In April 2011, Boulle, Ltd. filed a petition with the Trademark Trial and Appeal Board seeking to cancel the DE BOULLE Mark. In May 2012, Boulle, Ltd. filed

this lawsuit and requested that the TTAB proceeding be suspended. Later, in May 2012, De Boulle counterclaimed against Boulle, Ltd. and cross-claimed against its owner, Jean-Raymond Boulle.

4.      On July 31, 2014, the magistrate judge entered Findings, Conclusions, and Recommendations with to respect Boulle, Ltd. and Jean-Raymond Boulle's Motion for Summary Judgment and De Boulle's Cross-Motion for Summary Judgment (Doc. 154).

5.      On August 29, 2014, the court determined that the Magistrate Judge's findings and conclusions were correct and accepted them as those of the court (Doc. 175). The Court dismissed Boulle, Ltd.'s complaint and realigned the parties.

## B.      The Four Images Presented to the Jury

Defendants object to Plaintiff's proposal and request that the court include a depiction of the four BOULLE marks evaluated by the jury along with the following statement: "De Boulle objected to, and filed suit to enjoin, the use of the following marks for the retail sale of jewelry products and services in the United States." *See* Defs.' Resp., Ex. A ¶ 6.  Plaintiff opposes this request, contending that De Boulle counterclaimed to enjoin all of the "BOULLE" marks with applications at the United States Patent and Trademark Office ("USPTO") in all of their possible presentations.[1]

---

[1] The USPTO issued final actions and refused the applications associated with serial numbers 85040288, 85040020, 85040274 (partial refusal to the goods specified therein), 85040098, and 85040231, which represents Defendants' applications related to the BOULLE mark.  The USPTO found a likelihood of confusion between the BOULLE mark and the DE BOULLE mark.

As to the BB Boulle Jean Boulle Diamonds mark, associated with application numbers 85859699 and 85859706, the USPTO sent a suspension inquiry letter on May 10, 2015, in which it requested a response from Defendants to determine whether a continued suspension of the application is appropriate.

As to the Andre-Charles Boulle mark, opposition to the application has been filed and is pending at the Trademark Trial and Appeal Board.

**Memorandum Opinion and Order - 4**





### ANDRÉ-CHARLES BOULLE

The court determines that Defendants' position is supported by the court's charge to the jury. The jury charge discusses the USPTO's actions with regards to the "U.S. diamond and jewelry business." Court's Charge to the Jury 7-8. The jury charge included the four images shown above. The jury answered four questions as to the likelihood of confusion—one question for each of the images depicted above. Thus, the court will confine the judgment to the images depicted above.

For the same reasons explained above, the court will limit the injunction to the diamond and jewelry market in the United States and its territories. The jury also only considered the likelihood of confusion in the context of the diamond and jewelry market in the United States. The court asked the jury whether the "concurrent use of the [BOULLE marks] with the DE BOULLE mark for the retail sale of *U.S. jewelry products and services* is likely to create confusion . . . ."

Court's Charge to the Jury 15 (emphasis added). The jury returned an affirmative answer to the questions posed and did not decide the likelihood of confusion regarding the other classes of goods covered by De Boulle's trademark.  Therefore, while the trademarks allow for a broader class of goods, the scope of the trial focused on the diamond and jewelry market, and the court will include this limitation in its judgment.[2]

### C.    Whether the DE BOULLE Marks are Famous in Texas

The parties dispute whether the DE BOULLE marks are famous and distinctive within Texas or Dallas County, Texas.  Plaintiff argues that the DE BOULLE mark is famous in Texas or a geographic area of Texas, while Defendants argue that the mark is famous only in Dallas County, Texas.

 "[A] mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this state . . . ." Tex. Bus. Comm. Code § 16.103(b). The court asked the jury whether De Boulle "holds a famous and distinctive mark    . . . ." Court's Charge to the Jury 22.  The court defined "famous" as a mark that is "widely recognized by the public throughout this state or in a geographic area in this state . . . ." *Id.* 17.

Based on the jury charge and the scope of the trial, Defendants' contention that the DE BOULLE mark is famous and distinctive only in Dallas County, Texas, is too narrow, and it is unsupported by the record.  Nothing at trial ever limited Plaintiff's dilution claim to Dallas County, Texas, and it is reasonable to infer that the jury determined that the mark is famous in the state of Texas.  This tracks the language of the statute and the court's charge to the jury.  If Defendants

---

[2] This determination applies to those portions of Plaintiff's Motion for Judgment that relate to Plaintiff's claim for dilution under Texas law.  The court, however, will not restate its analysis for every instance this dispute arises.  For the reasons described in this section, the court determines that the injunction is properly limited to Defendants' use of the marks for the "retail sale of U.S. jewelry products and services."

desired to limit the jury's inquiry into the famousness of the DE BOULLE mark to Dallas County, Texas, it was incumbent upon them to bring this to the court's attention at the charge conference. Defendants failed to make any objection regarding the court's definition of "famous" as it relates to Plaintiff's claim for dilution, as required by Federal Rule of Civil Procedure 51(c). Accordingly, they have waived any right to complain about the adequacy or inadequacy of the court's definition in the charge, and the court determines, consistent with the jury findings, that the DE BOULLE mark is famous and distinctive within Texas or a geographic area of Texas.[3]

### D.     The Protectability of the "BOULLE" Marks

The parties dispute whether the court's final judgment should include a reference to the protectability of the "BOULLE" marks. Defendants argue that the court should omit Plaintiff's recommendation for the judgment, which states that the "BOULLE marks are not protectable." They argue that the jury did not make such a finding. Alternatively, Defendants assert that, if the court decides to include this language, it should limit its reference to the BOULLE mark addressed in the court's Memorandum Opinion and Order (Doc. 175), filed August 29, 2014. According to Defendants, in ruling on the parties' cross-motions for summary judgment, the court only considered the single "BOULLE" mark and not the "BB Jean Boulle Diamonds," "BB Boulle Jean Boulle Diamonds," and "Andre-Charles Boulle" marks.

The court previously determined that the "BOULLE" mark depicted below is not protectable. Neither the court nor the jury made any determinations regarding the protectability of the other three marks, as they were not included within the parties' motions for summary

---

[3] The court further notes that Defendants did not include a proposed instruction relating to Plaintiff's claim for dilution and, therefore, did not present the court with a proposed definition for "famous." *See* Defendants' Amended Proposed Jury Instructions and Issues (Doc. 185), filed September 2, 2014; and Defendants' Second Amended Proposed Jury Instructions and Issues (Doc. 243), filed January 12, 2015.

judgment, and the jury was not asked to determine their protectability.   As the judgment incorporates the court's prior opinions and the jury's findings and verdict, it includes the court's determination regarding the protecability of the BOULLE mark depicted below.



**E.     Whether the Court Should Include Reference to the Four Specific Marks Depicted in the Court's Charge to the Jury**

Plaintiff requests that the court include the following language in its final judgment and permanent injunction: "The concurrent use of any of the Boulle marks with the De Boulle mark for the retail sale of jewelry products and services in the United States is likely to cause confusion." Pl.'s Reply 5, Ex. B.  Defendants argue that the court should limit the injunction to the four specific marks at issue for the sale of U.S. jewelry products and services.

The court determines that Defendants' proposal more accurately reflects the scope of trial, and, therefore, the court will include only the four specific marks included in the jury charge.

**F.     Whether the Court Should Enjoin "Any Mark Containing the Word Boulle" and "Any Other Mark Confusingly Similar to the De Boulle Mark"**

Plaintiff requests that the court enjoin the use of "any mark containing the word 'Boulle'" and "any other mark confusingly similar to the De Boulle mark."  Defendants contend that the jury did not make a finding to support the court's inclusion of these phrases.   The court evaluates each of the proposed phrases separately.

**1.     "Any mark containing the word Boulle"**

Plaintiff requests that the court enjoin Defendants from using "any mark containing the word Boulle" to sell protected goods and services.  Since "Boulle" is the dominant aspect of "De

Boulle," Plaintiff asserts that any use of the word "Boulle" would cause confusion.  Plaintiff additionally argues that no witness identified a "Boulle" mark *unlikely* to cause confusion.

Defendants argue that the trial was limited to the four marks at issue and not any form of the word "Boulle."  The court agrees.  Denis Boulle, the owner of De Boulle, *even conceded this point at trial*.[4]

The court determines that a prohibition against "any mark containing the word "Boulle" is overly broad and beyond the scope of the trial.  Including this phrase would render meaningless the four separate questions that the court posed to the jury.  Plaintiff essentially requests relief as if the court asked the jury whether use of the word "Boulle" is likely to cause confusion.  This, however, is not the question that the court posed to the jury.  Accordingly, the court will not include the phrase "any mark containing the word 'Boulle'" in its final judgment.  At the same time, the court will not issue an injunction so narrow that it nullifies the jury verdict.  The court achieves the desired balance between the competing interests by including the language described in the following section.

---

[4]  At trial, the following exchange took place during the examination of Mr. Denis Boulle:

> Q. Are you - -is this lawsuit attempting to enjoin any possible use of the word Boulle under the sun?
> A.  No . . . .
> . . .
> Q: So it can be Charles Andre, Jean-Raymond Natalie, but if it says "Boulle" you don't want it to come into the U.S.[] right?
>
> A: I would have to look at it and get advice on it and try to be fair on it and let people look at it and say is this correct or not correct, and you are trying to tell me that I am saying I am going to close down Boulle.  It could be ridiculous.  It could be 500 names with it then.

Tr. of Record at 175, 182-83, *De Boulle Diamond & Jewelry Inc. v. Boulle Ltd*, 12-cv-1462 (2015).

**Memorandum Opinion and Order - 9**

## 2.    "Any other mark confusingly similar to the De Boulle mark"

Plaintiff argues that, unless broadly enjoined, Defendants will try to use another mark so similar to the DE BOULLE mark that additional litigation will result.  Plaintiff argues that the Fifth Circuit uses the "safe distance rule" under which courts issue "broad injunctions that prohibit conduct that clearly infringes the plaintiff's mark as well as conduct that ordinarily would not justify any relief."  Pl.'s Reply 1-2 (quoting *Conan Props. v. Conans Pizza, Inc.*, 752 F.2d 145, 154 (5th Cir. 1985)); *Sunbeam Prods. v. The West Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997), *overruled in part, on unrelated grounds*, by *Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001) ("The 'safe distance' rule vests broad discretion in the district court, to ensure that the Lanham Act is not frustrated by manufacturers who seek to circumvent injunctions with subsequent modifications.")) (emphasis omitted); *see also Eskay Drugs, Inc. v. Smith, Kline & French Labs.*, 188 F.2d 430, 432 (5th Cir.1951) ("In such a case as this, where the appellants have been found guilty of infringing the trade-mark rights of others, they should thereafter be required to keep a safe distance away from the dividing line between violation of, and compliance with, the injunction.").  Plaintiff relies on *Test Masters Education Services, Inc. v. Singh*, 428 F.3d 559, 578 (5th Cir. 2005), in which the district court enjoined the defendant from using the marks registered at the PTO "or *any confusingly similar* marks within Texas or directed at Texas."  (emphasis added).[5]

Defendants argue that including this language is overly broad and cites *Premiere Hot Tubs, Inc. v. A-Tex Family Fun Center, Inc.*, No. 12-824, 2014 WL 1666341, at *2 (N.D. Tex. April 25,

---

[5]  Both parties cite this case.  Plaintiff argues that this case supports the court's inclusion of the phrase "or any other mark that is confusingly similar" in the court's injunction.  Defendants argue that this case supports limiting the injunction geographically to Texas.

2014), in support of their contention.  As a preliminary matter, the court notes that the plaintiff in *Premiere Hot Tubs* requested that the court issue a permanent injunction in its motion for reconsideration, and, thus, this case involves a different procedural posture than what is before the court today.  *Id.* at *1 (citation omitted).  In any event, Defendants rely on this case, which held that issuing an injunction prohibiting the defendant's use of similar marks was an "overreach[] because similarity (i.e. likelihood of confusion) is the touchstone of trademark infringement litigation, and any future advertisement used by [defendant] which differ from those presented to the jury in this case must undergo separate likelihood of confusion analysis." *Id.* at *2.

Ultimately, the court determines that prohibiting Defendants from using the BOULLE mark or any other mark that is confusingly similar creates a safe distance between the DE BOULLE mark and any attempts by Defendants to circumvent the permanent injunction.  *See Conan Props., Inc.*, 752 F.2d at 153; *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 256, 550 (5th Cir. 1998) ("In reviewing the injunction, it is important to note that, [i]n fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable.") (citations omitted), *abrogated on unrelated grounds* by *Traffix Devices, Inc.*, 532 U.S. at 28; *but see Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 674-75 (5th Cir. 2000) (declining to apply the safe distance rule "where First Amendment interests are at stake").

Many courts include some variation of the language proposed by Plaintiff.  *See Test Masters Educ. Servs., Inc.*, 428 F.3d at 578 (holding that the "district court had the power to enjoin . . . [defendant] from using *similar marks* within Texas" but that "it erred in not circumscribing its order to only enjoin[ing] . . . [plaintiff's] right to the mark within Texas"); *S&H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 766 (N.D. Tex. 2013) (enjoining the defendant from "any further

use of marks that are identical or confusingly similar to the VIKING Mark or the VIKING Logo");

*Victoria's Secret Stores Brand Mgmt., Inc. v. VS Secrets of Romance, LLC*, No. 10-158, 2010 WL

36557639, at *1(E.D. Tex. Sept. 10, 2010) (enjoining defendant from using its mark "and any

other mark confusingly similar to Victoria's Secret's Marks or that is likely to dilute the distinctive

quality thereof, in the United States and worldwide"); and *Baylor Univ. v. Int'l Star, Inc.*, No. 0-

231, 2001 WL 1796464, at *4 (W.D. Tex. Nov. 7, 2001) (enjoining use of "any confusingly

similarly mark" to the Baylor mark).

Accordingly, the court determines that prohibiting Defendants from using any mark that is

confusingly similar to the DE BOULLE mark is not broader than necessary to ensure that

Defendants abide by the jury verdict returned in favor of Plaintiff.

### G.   Whether the Court Should Order Defendants to Cease Use and Destroy Materials Bearing the Designation "BOULLE"

Plaintiff requests that the court order Defendants to cease use of and destroy materials

bearing the designation "BOULLE," including Internet websites.  The parties' dispute arises

mainly from Plaintiff's proposed language prohibiting U.S. *access* to Defendants' websites.

Defendants argue that the court "should not require [them] to take down any website,

Twitter account or Facebook page that merely uses the word 'Boulle' but is not interactive and is

not used to sell goods or services in the United States." Defs.' Resp. 10.  Defendants argue that

they are foreign citizens and that "Plaintiff has not shown that any website, Twitter account or

Facebook page operated by Defendants has any effect on U.S. commerce." Defs.' Resp. 11-12.

Defendants argue that a broad prohibition against their websites would amount to an extraterritorial

application of the Lanham Act, which requires foreign activities to have "some effect" on U.S.

commerce, and, in support of their argument, they cite *McBee v. Delica*, 417 F.3d 107, 123 (1st

Cir. 2005) ("[G]ranting [injunctive] relief would constitute an extraterritorial application of the Act, and thus subject matter jurisdiction would only be appropriate if [plaintiff] could show a substantial effect on United States commerce.").  Additionally, Defendants assert that they have a registered trademark throughout the world and are entitled to use these marks elsewhere.

Plaintiff contends that Defendants wrongly cite cases that involve personal and subject matter jurisdiction. According to Plaintiff, personal jurisdiction has been waived,[6] and the court has subject matter jurisdiction.  Plaintiff further argues that *Delica* is distinguishable because the website was hosted in Japan and written in Japanese.  *Delica*, 417 F.3d at 124.  Moreover, as a practical matter, Plaintiff asserts that "De Boulle already blocks overseas access to its own website. No IP address that originates outside the U.S. can access www.deboulle.com." Pl.'s Reply 15.  The court determines that Plaintiff's proposed injunction does not involve an extraterritorial application of the Lanham Act. For ease of reference, Plaintiff's proposal is shown below:

> Boulle and Jean-Raymond Boulle shall promptly and permanently cease use of and destroy all marketing, promotional, or other materials bearing the designation "Boulle" as, or as part of, a trademark, service mark, trade name, domain name, or other designation of origin for the sale of Protected Goods and Services in the United States. Such materials include, but are not limited to, internet sites, signage, flyers, electronic and direct mail promotions, and business cards. Boulle and Jean-Raymond Boulle shall remove all "Boulle" designations from signage, websites, social media accounts, and other electronic media content created by, provided by, or under their control and relating to the sale or offering for sale of Protected Goods and Services and accessible to United States consumers.

Pl.'s Reply 6, Ex. B.[7]

---

[6]  Defendants never filed a motion to dismiss for lack of personal jurisdiction, and, therefore, they have waived this defense.  *See Gen. Design Sign Co., Inc. v. Am. Gen. Design, Inc.*, No. 02-2298, 2003 WL 2511931, at *1 (N.D. Tex. Jan. 31, 2003) (citations omitted). Because subject matter jurisdiction cannot be waived, the court will consider Defendants' arguments regarding the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. Rule 12(h)(3).

[7]  For reasons herein set forth, the court will limit the injunction to the diamond and jewelry market in the United States and include reference to the four marks at issue during the trial.

**Memorandum Opinion and Order - 13**

Defendants' reliance on *Delica* is misplaced.  In *Delica*, the plaintiff sought an injunction for a Japanese website that was written in Japanese and argued that the website's "mere existence . . . caused him harm, because United States citizens can view the website and become confused . . . ." 417 F.3d at 123.  The Second Circuit held that "allowing subject matter jurisdiction under the Lanham Act to automatically attach whenever a website is visible in the United States would eviscerate the territorial curbs on judicial authority that Congress is, quite sensibly, presumed to have imposed in this area." *Id.* at 124.  The court, however, acknowledged that it was still possible to enjoin websites that are visible in the United States but that the plaintiff must first establish a substantial effect on commerce.  While there was no substantial effect in *Delica*, the court could "imagine many situations in which the presence of a website would ensure (or, at least, help to ensure) that the United States has a sufficient interest." *Id.*

Plaintiff argues that *Delica* is distinguishable.  Plaintiff argues the following regarding Defendants activity in the United States:

> Here, Defendants have been quite active in the United States. They applied for U.S. trademarks with the expressed intent of using them, advertised to "Dallas" customers (DB Ex. 77), filed a petition in the TTAB to cancel De Boulle's trademarks, filed this lawsuit claiming Boulle was doing business in the United States and had already been damaged here, Dkt. 1, ¶¶ 11-12, 35, 38, and maintained a website and internet brochure claiming US outlets and offering diamonds and jewelry for sale through a phone number and email address (sales@boulle.com). (DB Exs.77, 148).

Pl.'s Reply 13.  Plaintiff also contends that *Delica* involved a website hosted in Japan and written in Japanese.

The court rejects Defendants' proposal as being too narrow.  At the time of trial, Defendants did not have any retail stores in the United States, and the jury nevertheless found that confusion was likely, and the court will not require Plaintiff to bring forth more evidence than was

necessary to establish confusion at trial.   *Cf.* Defs.' Reply 12 ("Nor has Plaintiff shown that Defendants have made any internet sales of goods or services to U.S. residents.").

The court determines that prohibiting Defendants from using any websites, containing the four BOULLE marks, or any mark confusingly similarly, relating to diamonds and jewelry in the United States is appropriate.   The injunction that the court will issue does not apply extraterritorially; that is, it will apply only to the United States and its territories.   As a preliminary matter, the court notes that Defendants failed to cite any Fifth Circuit authority that is directly on point.   In any event, the injunction does not offend the principles articulated in *Delica*.

Extraterritorial application of the Lanham Act refers to "application of the Act to activity (such as sales) of a defendant outside of the territorial boundaries of the United States." *Delica*, 417 F.3d at 116. The case relied on by Defendant acknowledges that "when the Lanham Act plaintiff seeks to enjoin sales in the United States, there is no question of extraterritorial application." *Id.* Thus, it is appropriate for the court to enjoin Defendant from using websites using the word "Boulle" for purposes of selling diamonds and jewelry in the U.S., and this is not an extraterritorial application of the Lanham Act. *See id.* at 123 ("In such a case, if a court had jurisdiction to enjoin sales of goods within the United States, it might have jurisdiction to enjoin the website as well, or at least those parts of the website that are necessary to allow the sales to occur.").  "Courts have repeatedly distinguished between domestic acts of a foreign infringer and foreign acts of that foreign infringer; the extraterritoriality analysis to determine jurisdiction attaches only to the latter." *Delica*, 417 F.3d at 122.

Ultimately, the court will stay within the bounds of trial and the jury verdict.  Defendants must remove BOULLE marks, or any mark confusingly similar, from any website used for diamond and jewelry *in the United States* and its territories. The court acknowledges that

**Memorandum Opinion and Order - 15**

Defendants have trademarks outside the territory of the United States, and it will not interfere with such international sales or promotional efforts.  At the same time, the jury found that the use of the BOULLE marks in the United States infringed upon the DE BOULLE mark, and the court will not permit Defendants to use websites to undermine the jury's verdict.[8]

## II.    Plaintiff's Motion for a Finding that this is an "Exceptional Case"

Plaintiff requests that the court determine that this case is "exceptional" and award attorney's fees accordingly.  Plaintiff argues that the following would support the court's determination: Defendants' meritless positions regarding Jean Raymond Boulle's use of the "Boulle" mark in the 1980s; Defendants' arguments that Jean Raymond Boulle breached the 1993 contract; Jean Raymond Boulle's contradictory statements during depositions; and Defendants' changing and contradictory trial strategies.  Defendants, however, contend that this case is not "exceptional."

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117.  Both parties agree that a recent Supreme Court case interpreting the term "exceptional" in the Patent Act controls the court's analysis.  *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).[9]

---

[8] The court notes that the parties also dispute the ability of the court to restrict Defendants' use of their social media accounts, including Facebook and Twitter, which does not directly involve the sale of diamonds and jewelry in the United States. The language in the injunction addresses this issue, and restricting Defendants' use of their Facebook and Twitter accounts does not involve an extraterritorial application of the Lanham Act.  As Plaintiff argues, "Defendants' Facebook and Twitter accounts are hosted by U.S. companies . . . ." Pl.'s Reply 14.  Plaintiff cites a case from the Southern District of New York for the proposition that "[a] website hosted in the United States is subject to Lanham Act claims." *The Name LLC v. Arias*, No. 10-3212, 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010) (citing *Rodgers v. Wright*, 544 F. Supp. 2d 302, 314-15 (S.D.N.Y. 2008) ("[O]peration of American website to further trademark infringement constitutes using trademarks in American commerce").  The Securities and Exchange Commission's website lists the state of incorporation for Facebook, Inc. as Delaware, and it lists the state of incorporation for Twitter, Inc. as Delaware.  Therefore, the court is not applying the Lanham Act extraterritorially by restricting Defendants' use of Facebook and Twitter.

[9] The court notes that the Patent Act contains an identical fee-shifting provision as the Lanham Act and permits district courts to award attorney's fees in exceptional cases. 35 U.S.C. § 285.

**Memorandum Opinion and Order - 16**

A case is exceptional if it:

> [1] stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness*, 134 S. Ct. at 1751.  The court evaluates each of the two ways a case can be exceptional in turn.

This case does not stand out with respect to the substantive strength of Defendants' litigating position.  As the parties recall, the court realigned the parties on August 29, 2014.  *See* Memorandum Opinion and Order (Doc. 175).  Defendants originally filed this action, as Plaintiffs, on May 10, 2012.  The court dismissed Defendants' (then-Plaintiff's)[10] affirmative claims on August 29, 2014.  The court ultimately found that the mark used by Jean Raymond Boulle in the 1980s never obtained secondary meaning, and, even if it did, Jean Raymond Boulle abandoned the mark.  The court's ultimate dismissal of Defendants' (then-Plaintiff's) affirmative claims, however, does not warrant a finding of exceptionality.  *See* Defs.' Resp. 4 (citing *Stragent, LLC v. Intel Corp.*, No. 11-421, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) ("[T]he mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on the arguments that were frivolous or made in bad faith.")).

What Plaintiff deems as a meritless claim by Defendants took the court two years to dismiss at the summary judgment phase.  *See* Memorandum Opinion and Order (Doc. 175), filed August 29, 2014; *cf. Calypso*, 2015 WL 1022745, at *4 ("The Court ultimately concluded that [defendant]

---

[10] Boulle LTD filed the Original Complaint (Doc. 1) in this action on May 10, 2012.  Jean Raymond Boulle was made a third-party defendant on May 24, 2012.  *See* Defendant's Answer and Affirmative Defenses to Plaintiff's Original Complaint, Counterclaim, and Third-Party Complaint (Doc. 6).

had the better argument in its *Markman* ruling, but the Court only did so after fifteen pages of analysis.").   The court determines that Plaintiff has not established that this case stands out with respect to the substantive strength of Defendants' litigating position compared to other similar cases.

In addition, the court determines that Plaintiff has not established that this case is exceptional because of the allegedly unreasonable manner in which it was litigated. The manner in which Defendants litigated the case is consistent with Plaintiff's approach and strategy and does not merit the label of being "exceptional."  Plaintiff requested, and the court allowed, evidence at trial regarding the parties' business operations in the 1980s.  This evidence demonstrated that Jean Raymond Boulle used the "Boulle" mark during that time period and that, upon his return to the country approximately twenty years later, he believed he retained the right to use variations of the "Boulle" name.  In light of Plaintiff's assertions regarding the relevance of the 1980s in this action, the court cannot say it was unreasonable for Defendants to rely on Jean Raymond Boulle's use of the Boulle name in the 1980s to assert their trademark infringement claim.  Moreover, Federal Rule of Civil Procedure 8(d)(3) explicitly permits a party to plead inconsistent claims and defenses. Accordingly, Defendants' positions regarding likelihood of confusion are not a basis for finding that this case is "exceptional."

As to Plaintiff's arguments regarding the 1993 contract, although it contends that the release was inconsistent with other positions taken by Defendants in this action, it does not provide the court with any evidence that raising this issue was unreasonable.  The magistrate judge stated that Defendants (then-Plaintiff) did not raise the issue in bad faith when they wanted to introduce arguments relating to the 1993 contract and release. *See* Transcript of Proceedings before the Honorable Paul D. Stickney, United States Magistrate Judge (Doc. 124), 22 ("There's no bad faith.

**Memorandum Opinion and Order - 18**

There was no gamesmanship.").[11]  While bad faith is not necessary for a case to be exceptional, the magistrate judge's perception of Defendants' conduct is part of the court's determination regarding the manner in which Defendants litigated this case.

This case has been extremely contentious from the outset, and the court does not believe that Defendants argued frivolous legal positions or litigated in an unreasonable manner.  Therefore, the court determines that this case is not exceptional.  *See DietGoal Innovations LLC v. Chipoltle Mexican Grill, Inc.*, No. 12-764, 2015 WL 1284826, at *1 (E.D. Tex. March 20, 2015) ("[Defendant] must show that [Plaintiff's] positions (individually or taken as a whole) were frivolous or objectively baseless."); *H-E Technology v. Overstock.com*, No. 12-0636, 2014 WL 4378750, at *4 (N.D. Tex. Sept. 3, 2014) ("Plaintiff may have asserted a losing argument, but this does not amount to the type of extraordinary misconduct reserved for finding a case exceptional."); *Calypso Wireless, Inc. v. T-Mobile USA Inc.*, No. 08-441, 2015 WL 1022745, at *4 (E.D. Tex. March 5, 2015) (acknowledging that the court had to spend "many days working through both the jumble of the Parties' conflicting versions of numerous events in the case and the motion practice that occurred in relation to a subset of those events" but that the defendant failed to "demonstrate[] by a preponderance of evidence that this case stands out from others with respect to the substantive strength of Plaintiffs' litigating position or by the manner in which the case was litigated, so as to be exceptional.").

---

[11] After the hearing, the magistrate judge issued an order granting Defendants (then-Plaintiff's) leave to amend; however, the court later recommitted issues raised by De Boulle's objections to the magistrate judge for further consideration and determination as he deemed appropriate. Although the magistrate judge never explicitly addressed arguments concerning bad faith again, he addressed the release as a viable argument and ultimately rejected Defendants' (then-Plaintiff's) position.  *See* Findings, Conclusions, and Recommendation (Doc. 154), filed July 31, 2014.

III.    **Permanent Injunction**

Plaintiff requests entry of a permanent injunction, although it sets forth no argument in support of its request.   The court may issue a permanent injunction "to prevent or restrain infringement of a copyright."   17 U.S.C. § 502(a).   The elements of a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success."   *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).   A party seeking a preliminary injunction must establish that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of the State of Florida  v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc)).   The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted.   *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993.   Otherwise stated, if a party fails to meet any of the four requirements, the court cannot grant the preliminary injunction.

Plaintiff satisfies the elements for a permanent injunction.   Plaintiff prevailed on the merits and received a jury verdict in its favor.   *See ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) ("A permanent injunction is generally only granted where, as here, a full trial on the merits has occurred.") (citation omitted).   In light of the jury verdict and the evidence presented by Plaintiff at trial, the court determines that there is a substantial threat that, if Defendants are not permanently enjoined, Plaintiff will suffer irreparable harm by Defendants' use of the BOULLE

marks, or any other mark that is confusingly similar to the DE BOULLE mark, and, this threatened injury outweighs any threatened harm to Defendants. The court, moreover, determines that granting a permanent injunction under these circumstances will not disserve the public interest. The public necessarily benefits from a permanent injunction, as the issuance of a permanent injunction lessens the likelihood that those who purchase, or may purchase, jewelry products and services will be misled by Defendants' use of the BOULLE marks, or any other mark that is confusingly similar to the DE BOULLE mark. Accordingly, when issuing its final judgment, the court will permanently enjoin Defendants from using the BOULLE marks, or any other mark confusingly similar to the DE BOULLE mark, for the retail sale of jewelry products and services in the United States, in accordance with 17 U.S.C. § 502(a) and Federal Rule of Civil Procedure 65(d)(2).

## IV.    Conclusion

For the reasons stated herein, the court **denies in part** and **grants in part** Plaintiff's Motion for Entry of Judgment (Doc. 279), filed January 27, 2015, to the extent herein stated. The court will enter a judgment and permanent injunction consistent with this memorandum opinion and order, its prior rulings, the Pretrial Order, the jury's verdict, and the agreed-upon matters between the parties to the extent such matters are necessary for the issuance of the judgment and permanent injunction.[12] The court further **denies** De Boulle's Motion for a Finding that this is an "Exceptional Case" (Doc. 280), filed January 27, 2015. The clerk of court **shall** send a certified copy of this Memorandum Opinion and Order to the PTO Commissioner for Trademarks.

---

[12] As both parties request that the court include a directive to the USPTO, the court will include such a directive in the final judgment and by separate order.

**Memorandum Opinion and Order - 21**

**It is so ordered** this 25th day of August, 2015.


Sam A. Lindsay
United States District Judge